# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| RAYMOND D. BUSHNER, | : | Case No. 2:24-cv-1861 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Edmund A. Sargus, Jr. |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| ANTHONY REYNOLDS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER and REPORT AND RECOMMENDATION[1]

Plaintiff Raymond D. Bushner ("Plaintiff"), a prisoner at the Lebanon Correctional Institution ("LeCI") proceeding without counsel, filed a Complaint alleging violations of his civil rights under 28 U.S.C. § 1983. ECF No. 1-1. The matter is currently before the undersigned Magistrate Judge upon Plaintiff's Motion for Leave to Proceed *in forma pauperis*, ECF No. 1, and to conduct the initial screen of Plaintiff's Complaint as required by law. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e).

For the reasons stated herein, the undersigned **ORDERS** that Plaintiff's Motion for Leave to Proceed *in forma pauperis* be granted; **ORDERS** Plaintiff to supplement his Complaint to address his Eighth Amendment failure to protect and First Amendment retaliation claims; and **RECOMMENDS** dismissal without prejudice of all remaining claims.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

## <u>MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS</u>

Plaintiff filed a motion for leave to proceed *in forma pauperis* on April 18, 2024, along with an affidavit of indigency and a trust account statement from the Ohio Department of Rehabilitation and Correction.  ECF Nos. 1, 1-1.

In accordance with section 804(a)(3) of the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(b)(1), Plaintiff must pay an initial partial filing fee of 20 percent of the greater of the average monthly deposits to his prison account or the average monthly balance in his account for the six-month period immediately preceding the filing of the complaint.  After payment of the initial partial filing fee, Plaintiff is further required to make monthly payments of 20 percent of the preceding month's income credited to his prison account until he pays the full amount of the filing fee.  28 U.S.C. § 1915(b)(2).

Plaintiff's application and trust fund account statement reveal that he has insufficient funds in his prison account to pay the full filing fee.  ECF No. 1.  After consideration by this Court of the Plaintiff's affidavit of indigence only, without regard to the merits of this case, Plaintiff's Motion for Leave to Proceed *in forma pauperis* is hereby **GRANTED** pursuant to 28 U.S.C. § 1915(a).

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust fund account at the institution where he now resides is directed to calculate, as an initial partial payment, twenty percent (20%) of the greater of:

(a)  the average monthly deposits to the inmate trust account; or

(b) the average monthly balance in the inmate trust account, for the six (6) months immediately preceding January 10, 2024.

The custodian is **ORDERED** to complete and to submit to the Clerk of Court in Columbus, Ohio, the attached form showing his calculation of the initial partial filing fee.  The custodian is further **ORDERED** to forward from Plaintiff's prison account to the Clerk of Court located in Columbus, Ohio, the initial partial filing fee, as funds become available in Plaintiff's account until the initial filing fee is paid.  Even if the account is under ten dollars ($10.00), the custodian must still forward payments to the Clerk of Court to pay the initial filing fee.

After full payment of the initial partial filing fee, the custodian shall forward to the Clerk of Court located in Columbus, Ohio, monthly payments of twenty percent (20%) of Plaintiff's preceding monthly income credited to his prison account, but only when the amount in the account exceeds ten dollars ($10.00), until the full fee of three hundred and fifty dollars ($350.00) has been paid to the Clerk of Court.  28 U.S.C. § 1915(b)(2).

The Clerk of Court is **DIRECTED** to send a copy of this Order to the institutional cashier.

***The prisoner's name and case number <u>must</u> be noted on each remittance.***

Checks are to be made payable to:  **Clerk, U.S. District Court**.

Checks are to be sent to:

**Prisoner Accounts Receivable**
121 U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

The next step in Plaintiff's case is for the Court to conduct an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

<u>**INITIAL REVIEW OF PLAINTIFF'S COMPLAINT**</u>

**I.    Plaintiff's Complaint**

On April 24, 2024, Plaintiff filed his 28 U.S.C. § 1983 Complaint with this Court naming Eric Kerner ("Kerner"), Institutional Investigator Tabor ("Tabor"), Captain Berry ("Berry"), Lieutenant Edwards ("Edwards"), Unit Manager Cory Krabbe ("Krabbe"), Correctional Officer Jordan Lykins ("Lykins"), and Unit Manager Jessie Willis ("Willis"), all of whom are LeCI employees, as Defendants in their individual capacities.    ECF No. 1-1 at PageID 11-14.  The allegations giving rise to the Complaint stem from a call Plaintiff made to the Prison Rape Elimination Act ("PREA") hotline on September 20, 2023 (the "Call") while Plaintiff was housed in unit "A-Adam" at LeCI.  ECF No. 1-1 at PageID 16.  In the Call, Plaintiff explained that he was fearful for his safety due to his placement in A-Adam, which he described as "the worse housing unit in LeCI in regards to violence, sexual assault, etc." *Id.* (capitalization corrected).

Plaintiff alleges that, as a result of the Call, he was called into Defendant Tabor's office for an interview the following day.  *Id.*  During the interview, he explained to Tabor that he made the Call because he had been a victim of sexual abuse at previous prisons and feared future sexual abuse/assaults since some of his prior abusers were also now housed at LeCI in the A-Adam unit. *Id.*  Plaintiff claims Tabor yelled at him, called him a manipulator, indicated he was not going to help Plaintiff, and informed him that the only way he would be moved from A-Adam was if he "refused to lock."  *Id.* (internal quotations omitted).  When Plaintiff later took his concerns to Defendant Krabbe, Plaintiff alleges Krabbe also told him he would not help him.  *Id.*

According to Plaintiff, on November 22, 2023, he was "mistakenly" released from

"segregation"[2] "for a conduct report" by Defendant Edwards but was moved back to A-Adam due to orders by Defendants Krabbe, Berry, and Kerner.  *Id.* (quotations in original).

Plaintiff alleges that in the afternoon of November 26, 2023, he woke up from a nap to see inmate Cunningham, who appeared intoxicated, masturbating and making sexual remarks to Plaintiff while staring at Plaintiff and holding a knife.  *Id.* at PageID 17.  Plaintiff asked inmate Cunningham what he was doing, but Cunningham told him to be quiet and placed his hand on Plaintiff's buttocks, before admitting that he was acting at the bequest of Defendants Krabbe and Lykins in exchange for contraband.  *Id.*  Plaintiff reported the incident with Cunningham (the "Sexual Assault Incident") to Defendant Lykins, who told Plaintiff that "she didn't care."  *Id.*

That same day, Plaintiff overheard Defendant Lykins talking to inmate Cunningham.  *Id.* In the conversation with Cunningham, Plaintiff alleges that Lykins referenced the Sexual Assault Incident.  *Id.*

On November 27, 2023, Defendants Krabbe, Berry, and Kerner authorized Plaintiff's return to segregation.  *Id.*  That same night, Plaintiff alleges he was told by a segregation officer that Krabbe violated prison policy and ordered inmate Cunningham to pack up Plaintiff's personal belongings[3] when Plaintiff was not present, but that instead of packing his belongings, inmate Cunningham stole them.  *Id.* at PageID 18.

The following day, Plaintiff reported the theft of his belongings and the Sexual Assault Incident as well as the lack of response by LeCI staff to the mental health unit.  *Id.*  Later that same day, Plaintiff was interviewed by Defendants Kerner and Berry, and he told them about Cunningham's theft, the Sexual Assault Incident, and Lykins' alleged "negligence."  *Id.*  In

---

[2] The Court notes it is unclear from the allegations in the Complaint when Plaintiff was placed in segregation or if the "A-Adam" housing unit referenced in his Complaint is able to support "segregation" without being placed in a different unit.

[3] Again, it is unclear from the allegations where Plaintiff had been housed or why he was being moved.

response, Kerner and Berry yelled profanities at Plaintiff, told him they did not believe him, and notified him that the Sexual Assault Incident did not qualify as an act of sexual abuse or harassment under the PREA. *Id.* Finally, Kerner and Berry told Plaintiff they condoned Lykins' actions, and admitted that they, along with Krabbe, told inmate Cunningham to "give [Plaintiff] a reason to file a lawsuit." *Id.* at PageID 18-19 (capitalization corrected). Plaintiff alleges Kerner ultimately closed Plaintiff's PREA Complaint after a week as unsubstantiated without performing a proper investigation. *Id.* at PageID 19. When he returned to segregation, Defendant Edwards told him that the Sexual Assault Incident was ordered by Defendants Krabbe, Tabor, and Berry, in retaliation for the Call. *Id.*

According to Plaintiff, on December 7, 9, and 10, 2023, he complained to LeCI staff that he was "having a mental health crisis," but non-defendant Amber Stanley denied him assistance. *Id.* at PageID 24.

On December 11-13, 2023, Plaintiff repeatedly told Defendant Edwards that he wanted to make an "attorney phone call" so he could file a lawsuit against LeCI staff for neglect and retaliation but was told by Edwards that he could not make any attorney call because Edwards would be "going over his bosses heads." *Id.* (capitalization corrected).

On February 24, 2024, Plaintiff alleges he was assigned a new cell mate who was friends with and in the same gang as inmate Cunningham, and that as a result he "refused to lock." *Id.* at PageID 20 (internal quotations omitted). Due to his refusal to lock, Plaintiff asserts he was taken to segregation at the orders of Defendant Willis, where he was assigned a cell with inmate Archie Goggans, who was in segregation due to "sticking a broomstick in another inmate[']s anus." *Id.*

Plaintiff alleges that although he notified all Defendants that Goggins is a sexual predator, none of the Defendants adequately investigated his claim.  *Id.*

On March 4, 2024, Plaintiff made a request to Defendant Willis (and the protective custody committee) to be placed in protective custody after receiving death threats from Cunningham's gang for reporting the Sexual Assault Incident involving Cunningham to prison officials.  *Id.* at PageID 20-21.  During his interview with Willis, Plaintiff explained threats were being made on his life because Cunningham's gang believed Plaintiff was a snitch due to the Call.  However, Plaintiff alleges his request was denied after two days, and he has been returned to general population where he is "forced to carry knives for protection."  *Id.* at PageID 21 (capitalization corrected).  Therefore, Plaintiff asserts, in order to preserve his personal safety, he had to refuse to lockdown (after which presumably he is removed from general population into segregation).  *Id.*

According to Plaintiff, he reported to each Defendant on at least three separate occasions that he is in fear for his life, but his reports were ignored.  *Id.* at PageID 22.  As a result, Plaintiff alleges he receives ongoing threats to his life from multiple gang members due to Plaintiff's reporting of the Sexual Incident, and that if nothing is done, Plaintiff may have to resort to using deadly force in the future to defend himself.  *Id.*

Finally, Plaintiff alleges that all administrative remedies have been exhausted.  *Id.* at PageID 24.

As Plaintiff does not allege any specific constitutional claims, the Court has endeavored to group and categorize Plaintiff's allegations into potential constitutional violations for screening purposes.  *See Barhite*, 377 F. App'x 508, 511 (6th Cir. 2010) (citing *United States v. McDonald,* 326 F. App'x 880, 882 (6th Cir. 2009)) ("[C]ourts may elect to recharacterize pro se filings for the benefit of the pleader.").  The claims are construed as follows:

1.      Eighth Amendment failure to protect against Tabor and Krabbe for failing to reassign Plaintiff to a different housing unit after Plaintiff informed Tabor and Krabbe that Plaintiff was sexually assaulted at another institution; against Lykins and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff; against Lykins, Kerner, and Berry for ignoring Plaintiff's report of the Sexual Assault Incident; and against all Defendants for failing to protect him from future sexual assaults following the Sexual Assault Incident.

2.      Retaliation for calling the PREA hotline against Defendants Lykins, Krabbe, Tabor, and Berry.

3.      Prison policy violations including access to grievance procedures and failure of prison staff to follow prison policies and procedures against all Defendants (including claims of allowing inmates to pack his property outside of Plaintiff's presence, failing to properly investigate allegations of misconduct brought against Plaintiff, and failing to act after Plaintiff informed all Defendants he was in danger due to his cellmate re-assignment).

4.      Theft of his personal property by inmate Cunningham.

5.      Denial of access to attorney communication against Edwards and unnamed "bosses."[4]

ECF No. 1-1 at PageID 14-22.

Plaintiff categorizes his resulting injuries as "emotional distress," including contemplating suicide, and seeks compensatory damages, punitive damages, and declaratory relief in the form of a declaration that all acts and omissions of all Defendants violated Plaintiff's federally protected

---

[4] Because the "bosses" are not named as defendants and are not known to be parties to this case, the undersigned declines to analyze Plaintiffs statements with respect to these non-defendants and **RECOMMENDS** that any purported claims with respect to them be **DISMISSED**. S*ee Chapple v. Franklin Cnty.*, No. 2:21-CV-5086, 2022 WL 856815, at \*16 (S.D. Ohio Mar. 23, 2022), *report and recommendation adopted as modified sub nom. Chapple v. Franklin Cnty. Sheriff's Officers FCCC 1 & 2,* No. 2:21-CV-05086, 2022 WL 16734656 (S.D. Ohio Nov. 7, 2022).

constitutional rights, an emergency injunction requiring the Ohio Department of Rehabilitation and Corrections to transfer Plaintiff from LeCI, and issuance of an institutional separation from inmate Cunningham and from each named Defendant.  *Id.* at PageID 23.

## II.    Initial Screening Standard

Because Plaintiff is a *pro se* prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint.  28 U.S.C. § 1915A(a).  The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is

immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.

Finally, in the interest of justice, this Court is required to construe a *pro se* complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f)).  Even with such a liberal construction, a *pro se* complaint must still adhere to the "basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a *pro se* "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory.'"  *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## III.   Discussion

As noted above, Plaintiff seeks relief against all Defendants in their individual capacities pursuant to 28 U.S.C. § 1983.  To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.[5]  *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams,* 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks,* 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.,* 134 F.3d

---

[5] The Court notes that police officers are generally considered to act under color of state law.  *See United States v. Torres–Ramos*, 536 F.3d 542, 554 (6th Cir.2008); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 394 (6th Cir. 1989)).  Plaintiff sufficiently alleges that all *named Defendants* were acting under color of law, therefore that element will not be addressed and is instead presumed in this section.  *See generally* ECF No. 1-1.

1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff has alleged claims of Eighth Amendment failure to protect; First Amendment retaliation for calling the PREA hotline; prison policy violations, including access to grievance procedures and failure of prison staff to follow prison policies; theft of his personal property; and denial of access to a telephone to call his attorney. ECF No. 1-1 at PageID 16-21. The apparent theory of Plaintiff's Complaint is that his Call to the PREA hotline set the wheels in motion for his various claims addressed below.

For the reasons set forth below, the undersigned **ORDERS** Plaintiff to supplement his Complaint to address his Eighth Amendment failure to protect and First Amendment retaliation claims and **RECOMMENDS** dismissal without prejudice of all remaining claims.

A.     **Order on Initial Review**

    i.     ***Failure to Protect***

The Court construes Plaintiff's allegations as alleging the following failure to protect claims under the Eighth Amendment: (1) against Tabor and Krabbe for failing to reassign Plaintiff to a different housing unit after Plaintiff informed Tabor that Plaintiff was sexually assaulted at another institution, (2) against Kerner, Berry, Lykins, and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff, and (3) against all Defendants for ignoring Plaintiff's report of the Sexual Assault Incident and failing to reassign him to a new housing unit. ECF No. 1-1 at PageID 16-21.

The Eighth Amendment imposes a duty on corrections officers to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). However, not "every injury suffered by one prisoner at the

hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to maintain an Eighth Amendment claim based on a failure to prevent harm, an inmate must allege both an objective and subjective component. *Id.*

Regarding the objective component, a plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* Courts may consider factors such as the relative size, mental capacity, and nature of the inmate when considering the potential for harm a situation poses. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)

The subjective component requires the plaintiff to allege that the defendant acted with "deliberate indifference" to that risk. *Id.* "Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotation marks and citations omitted); *Farmer*, 511 U.S. at 834, 837. Such knowledge can be inferred via circumstantial evidence or "from the very fact that the risk was obvious." *Id.* at 842. However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment, even if the risk was obvious and a reasonable prison official would have noticed it. *See id.* at 841-42. Therefore, the objective component is satisfied by allegations that absent reasonable precautions, an inmate was exposed to a substantial risk of serious harm. *Id.* at 836.

Plaintiff first alleges that he sought transfer to another unit from Defendants Tabor and Krabbe due to his fear of sexual assaults resulting from incidents that occurred at other institutions, but involving inmates currently housed at LeCI, and that he again sought transfer after the Sexual Assault Incident. While Plaintiff alleges he was transferred multiple times, it is unclear from the allegations in the Complaint when, where, and how he was transferred. Part of the confusion

results from this Court's lack of familiarity with the terms used by Plaintiff in his Complaint. For example, Plaintiff alleges he was housed in unit "A-Adam" but also refers to being in "restrictive housing" or "segregation" after the Call was made. As this Court cannot determine why Plaintiff was moved, it is unclear if he was moved by Tabor and Krabbe because of the Call, which would indicate lack of the subjective component, or if Plaintiff's transfer was unrelated. As such, Plaintiff's claim against Tabor and Krabbe for failing to relocate him following the Call is subject to dismissal as currently pleaded.

Plaintiff also alleges Eighth Amendment failure to protect claims stemming from what this Court characterizes as Defendants' failure to assign Plaintiff to a new unit away from gang members who, as a result of the Call and his reporting of the Sexual Assault Incident, believe Plaintiff to be a snitch, and for housing Plaintiff with his current cell mate who Plaintiff asserts is a known sexual predator. While it appears some of the components of an Eighth Amendment failure to protect claim are met, the confusing nature of the allegations relating to where Plaintiff was housed and why prevents this Court from rendering such a finding.

Plaintiff alleges he was moved into segregated or restrictive housing on several occasions, but the Court is unable to ascertain if Plaintiff's references to restrictive housing and segregation are interchangeable, or if they are different units. Additionally, it is unclear what segregated housing means in the context of Plaintiff's complaint, how or why his cellmate was changed, where he was placed, and by whom. It is also unclear to this Court what type of unit A-Adam is (general population, restrictive, segregated, or isolation). Again, without amendment, due to the lack of specificity of the allegations against all Defendants for their actions following the Sexual Assault Incident, those claims should fail.

"Without additional facts, the Court cannot infer more than the mere possibility of misconduct, [as] the [Plaintiff] has alleged—but has not "show[n]—that [he] is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).  While dismissal is appropriate in such instances, the Court will allow Plaintiff the opportunity to amend his Complaint to address any pleading deficiencies and to clear up any confusion regarding the various terms used in the Complaint.  Specifically, the Court grants Plaintiff leave to supplement his Complaint to provide the following details in support of his Eighth Amendment claims: the names and description of each unit he was placed in, the dates he was moved, and the basis for the transfers. For example, if Plaintiff was moved from "A-Adam to restrictive housing," an explanation of what type of unit A-Adam is, a description of what restrictive housing is, when the move was made, why, and by whom, is necessary to allow this Court to address any claim arising from such a move.

Finally, while it does appear Plaintiff's claims against Kerner, Berry, Lykins, and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff, resulting in the Sexual Assault Incident, may proceed, this Court shall refrain from addressing that claim until Plaintiff has either supplemented his Complaint as set forth in this order, or the time has passed to do so, in which case the Court will perform an initial review of Plaintiff's Eighth Amendment claims as currently alleged in the Complaint.

### ii.    Retaliation

Plaintiff also alleges Defendants Krabbe, Tabor, Berry, and Lykins retaliated against him for placing the Call to the PREA hotline by orchestrating the Sexual Incident, intending to cause

Plaintiff mental distress and anxiety, and that the Sexual Incident occurred because of the Call. Doc. 1-1 at PageID 19.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Specifically, a prison official may not transfer a prisoner "as a means of retaliating against him for exercising his First Amendment rights." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010).

To establish a claim of retaliation, a plaintiff must show that:

(1) he was engaged in protected conduct;[6] (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wiley v. Kentucky Dept. of Corr.*, No. 11–97–HRW, 2012 WL 5878678, at *13 (E.D. Ky. 2012) (citing *Brown v. Crowley,* 312 F.3d 782, 787 (6th Cir. 2002)).

Reading Plaintiff's Complaint liberally, this Court construes the facts as alleged by Plaintiff as claiming Defendants Krabbe, Tabor, and Berry's response to Plaintiff's Call to the PREA hotline to complain about his housing assignment as First Amendment retaliation. But, for the same reasons as discussed in relation to Plaintiff's Eighth Amendment claims, the facts supporting his claims are not clear. Specifically, it is unclear if Defendants Krabbe, Tabor, or Berry refused to reassign Plaintiff to different housing (which could meet the pleading requirement for an

---

[6] Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, it follows that the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

"adverse action"), as Plaintiff alleges both that they refused to reassign him and that he was placed in segregation, indicating that he was indeed moved. ECF No. 1-1 at PageID 16. While Plaintiff also references refusing to "lock" in order to be moved from unit A-Adam, it is unclear from the allegations in his Complaint if that is the reason for his placement in segregation after the Call (or if A-Adam and segregation are the same placement).

The Court notes that, to the extent Plaintiff seeks to hold these Defendants liable based on their alleged failure to investigate or take corrective action in response to his PREA Call, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Moreover, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. See *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the

defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

To the extent Plaintiff alleges no more than a failure to investigate or take corrective action of part of the Defendants, his claims would fail, as it appears that Plaintiff was transferred after the Call and Plaintiff fails to provide any detail as to the actions each Defendant took when informed of the Call. However, the Court grants Plaintiff leave to supplement his Complaint to provide factual details supporting his retaliation claims, including when, where, and why he was moved from A-Adam to segregation following the Call, or any specific allegations connecting other Defendants with Plaintiff's retaliation claim.

Again, to the extent Plaintiff intended to bring retaliation claims against Defendants Kerner, Berry, Lykins, and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff, resulting in the Sexual Assault Incident, it appears those claims may proceed. However, this Court shall refrain from addressing those claims until Plaintiff has either supplemented his Complaint as set forth in this Order, or the time has passed to do so, in which case the Court will perform an initial review of Plaintiff's First Amendment retaliation claims as currently alleged in the Complaint.

**B.    Recommendations on Initial Review**

Having thoroughly reviewed the Complaint, for the following reasons, the undersigned **RECOMMENDS** that all remaining claims be **DISMISSED** without prejudice.

### i.    *Theft of personal property*

Plaintiff claims that his personal property was stolen by inmate Cunningham when Defendant Krabbe ordered Cunningham to "bag up" Plaintiff's possessions.  ECF No. 1-1 at PageID 18.

To the extent Plaintiff asserts that Krabbe violated his right to due process, the Fourth Amendment does not protect against seizures in a prison cell, as prison officials are "free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Hudson v. Palmer,* 468 U.S. 517, 528 n. 8 (1984).  However, Plaintiff alleges that an inmate, not a prison official, stole his property.  As an inmate is not a state actor, Plaintiff's personal properly claims may proceed only to the extent Plaintiff asserts Defendant Krabbe was responsible for the theft. *See e.g. Damron v. Hardeman Cnty. Corr. Facility*, No. 20-1239-JDT-CGC, 2021 WL 278301, at *4 (W.D. Tenn. Jan. 27, 2021).

Such a claim arises under the Due Process Clause of the Fourteenth Amendment.  *Id.* However, even if the taking of Plaintiff's property can be attributed to Krabbe's actions, and those actions were intentional, "deprivation of property does not state an actionable claim under § 1983 if adequate state remedies are available to redress the deprivation."  *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds* by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  Therefore, "to state a procedural due process claim, 'the plaintiff thus must plead that his available state remedies are inadequate to redress the wrong.'"  *Id.* (quoting *Trusty v. Centurion Health Servs.*, No. 19-5872, 2020 WL 548225, * 2-3 (6th Cir. Jan. 7, 2020)).

As Plaintiff has not alleged that any state remedy, such as filing suit in state court to recover his property, was inadequate, the undersigned **RECOMMENDS** any intended claims against

Defendant Krabbe regarding the theft of Plaintiff's personal property by inmate Cunningham be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted**.**

### ii. *Prison Policy and Grievance Procedure Violations*

Plaintiff's claims that Defendants failed to respond to his grievances or otherwise failed to follow prison policy cannot proceed for several reasons.  First, there is "no constitutional right to an effective, fair, or properly functioning prison grievance procedure, and a prison inmate does not have a constitutionally protected interest in prison grievance procedures." *Young v. Hodge*, No. 3:12-0009, 2012 WL 5494892, at *7 (M.D. Tenn. Nov. 13, 2012), *report and recommendation adopted*, No. 3:12-CV-0009, 2013 WL 440964 (M.D. Tenn. Feb. 5, 2013) (citing *Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441 (6th Cir. 2005); *Miller v. Haines,* 156 F.3d 1231, 1998 WL 476247 (6th Cir. Aug. 3, 1998); *Spencer v. Moore,* 638 F. Supp. 315 (E.D. Mo. 1986); *Azeez v. DeRobertis,* 568 F. Supp. 8 (N.D. Ill. 1982)).  As Plaintiff has no constitutionally protected interest in LeCI's grievance procedures, the undersigned **RECOMMENDS** all claims against all Defendants regarding the functioning of the LeCI grievance procedure be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted**.**

Second, this Court is also unable to enforce prison policies and instead may only address claims that give rise to a constitutionally protected interest.[7]  As such, to the extent Plaintiff submits

---

[7] The Due Process Clause "does not protect every administrative slight that occurs behind prison walls." *Harden-Bey v. Rutter*, 524 F.3d 789, 791 (6th Cir. 2008).  The United State Supreme Court and the Sixth Circuit have addressed many common incidents of prison life, ultimately finding they do not raise due process concerns, as they do not rise to a protected liberty interest.  *Id.*  These include the use of four-point restraints without the presence of a nurse, *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008), the banning or restriction of visitors, *Bazzetta v. McGinnis*, 430 F.3d 795, 802-03 (6th Cir. 2005), the designation of a prisoner as a threat to others, *Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005), increasing a prisoner's security classification, *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001), *see also Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) (a prisoner has no right to a particular security level), assigning an inmate serving a life sentence to segregation without a reclassification hearing, *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995), and the right to accrue good time credits, *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir. 1992) ("The United States Supreme Court has held that inmates have no inherent constitutional right to good time credit.") (citing *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974)).

he was required to be present for the inventory of his personal property under prison policy, his claim is to no avail, as there is no constitutionally protected right to be present during inventory of a prisoner's property, and this Court cannot order prisons to enforce their own regulations.  *See e.g. Martinez v. Menchaca*, No. C-08-197, 2009 WL 3334896, at *8 (S.D. Tex. 2009) (denying inmate's claim that the prison violated a regulation which required him to be present during inventory of his property resulted in a due process violation).

Finally, where no constitutional injury is alleged, the PLRA bars compensatory damages if a plaintiff fails to allege physical injury.  *King v. Zamiara*, 788 F.3d 207, 212-13 (6th Cir. 2015). As Plaintiff only alleges mental distress injuries for his non-constitutional claims, such claims cannot proceed.

For these reasons, the undersigned **RECOMMENDS** that all claims against all Defendants for violations of prison policies be **DISMISSED** without prejudice.

### iii.    *Access to Attorney Phone Call*

Plaintiff alleges he was denied access to call counsel regarding filing the instant lawsuit by Defendant Edwards.  ECF No. 1-1 at PageID 24.  However, to present a viable denial of access claim, Plaintiff must establish denial of any *meaningful* access.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).  As Plaintiff alleges a denial of access to a phone to call counsel to file a case that he eventually filed, and as Plaintiff fails to allege any other denial of access to the courts relating to the instant suit, his claim clearly fails.

As such, the undersigned **RECOMMENDS** that all claims against Defendant Edwards for denial of access to an attorney phone call be **DISMISSED** without prejudice.

**IT IS THEREFORE ORDERED THAT:**

1.      Plaintiff's Motion for Leave to Proceed *in forma pauperis*, ECF No. 1, is **GRANTED**.

2.      Plaintiff is granted leave to file a supplemental complaint, providing additional facts and details as described herein addressing his Eighth Amendment failure to protect and First Amendment retaliation claims, within **thirty (30) days** from the date of this Order.  Plaintiff's failure to file a supplemental complaint within the allotted time will result in this Court considering his Eighth Amendment failure to protect and First Amendment retaliation claims as set forth in his Complaint, and will result in this Court recommending dismissal of all claims except his claims against Kerner, Berry, Lykins, and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff, resulting in the Sexual Assault Incident.  Finally, to the extent Plaintiff requires additional time to file any supplemental complaint, he must move for an extension of time prior to the expiration of the deadline to supplement.

3.      Plaintiff is reminded that he must keep this Court informed of his current address and promptly file a notice of his new address if he is released or transferred to a different institution.


**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Court **DISMISS** all remaining claims in Plaintiff's complaint **without prejudice**.

2.      The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that, for the foregoing reasons, an appeal of any Order adopting this Report and Recommendation would not be taken in good

faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

May 15, 2024                                *s/Peter B. Silvain, Jr.*

                                                      Peter B. Silvain, Jr.
                                                      United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**CALCULATION OF INITIAL PARTIAL FILING FEE**

Prisoner's name: _____

Case number: _____

Average Monthly Balance $_____
     (for six-month period preceding filing of complaint or notice of appeal)

Average Monthly Deposits $_____
     (for six-month period preceding filing of complaint or notice of appeal)

Initial Partial Filing Fee $_____
     (the greater of the average monthly deposits or the average monthly balance x .20)


_____     _____
Date                          Signature