**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| RAYMOND D. BUSHNER, | : | Case No. 2:24-cv-1861 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Edmund A. Sargus, Jr. |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| ERIC KERNER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER and**
**REPORT AND RECOMMENDATION**[1]

On April 18, 2024, Plaintiff Raymond D. Bushner ("Plaintiff"), a prisoner at the Lebanon Correctional Institution ("LeCI") proceeding *in forma pauperis*[2] and without counsel, filed a Complaint under 28 U.S.C. § 1983 alleging claims of Eighth Amendment failure to protect, First Amendment retaliation, prison policy violations, theft of personal property, and denial of access to counsel against multiple Defendants, all of whom are LeCI employees (the "Complaint"). ECF No. 1-1. On May 16, 2024, this Court issued an Order and Report and Recommendations on initial review, ordering Plaintiff to file a supplemental complaint addressing his Eighth Amendment failure to protect and First Amendment retaliation claims, and recommending dismissal of all remaining claims. ECF No. 2. Plaintiff, in compliance with the Order, filed an "Affidavit of Verity" on May 10, 2024, and a supplement to his Complaint on June 3, 2024 (the "Supplemental Complaint"). ECF Nos. 5 & 6.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Plaintiff was granted leave to proceed *in forma pauperis* on May 16, 2024. ECF No. 2.

The matter is currently before the undersigned Magistrate Judge to conduct the initial screen of Plaintiff's Supplemental Complaint, ECF No. 6, as required by law. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e). Also before the Court is Plaintiff's "Motion for Public Records Request," ECF No. 4, and Plaintiff's Motion to Compel Discovery, ECF No. 7.

For the reasons that follow, this Court **ORDERS** that the Motion for Public Records Request and Motion to Compel Discovery shall be **DENIED without prejudice** as premature. The Court **RECOMMENDS** that all of Plaintiff's claims as set forth in both the Complaint, as discussed in this Court's prior Report and Recommendation, ECF No. 2, and in his Supplemental Complaint be **DISMISSED without prejudice** with the exception of the Eight Amendment failure to protect claims and the First Amendment retaliation claims as set forth below.

## THE MOTION FOR PUBLIC RECORDS REQUEST

Plaintiff filed a "Motion for Public Records Request," seeking names of officers and copies of prison grievances, appeals, and other complaints filed by Plaintiff pursuant to Chapter 149 of the Ohio Revised Code (the "Motion"). ECF No. 4. The Court construes Plaintiff's request as a motion to compel discovery. Plaintiff also filed a Motion to Compel Discovery from Defendants. ECF No. 7. Motions to compel discovery filed in conjunction with a complaint governed by the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, are premature where process has not yet been served. *McLaughlin v. Drain*, No. 3:22-cv-00988, 2022 WL 17861427, at *4 (M.D. Tenn. Dec. 21, 2022).

As Plaintiff's Motions were filed prior to this Court's completion of its initial review, Defendants have not yet been served with copies of the Complaint. Therefore, Plaintiff's Motion for Public Records Request and Motion to Compel Discovery are **DENIED as premature**, without

prejudice to renewal, if necessary, after process is served, and Plaintiff has the chance to request the items in uncompelled discovery.

## <u>INITIAL REVIEW OF PLAINTIFF'S SUPPLEMENTAL COMPLAINT</u>

### I.  Factual Background[3]

On April 24, 2024, Plaintiff filed his 28 U.S.C. § 1983 Complaint with this Court naming Eric Kerner ("Kerner"), Institutional Investigator Tabor ("Tabor"), Captain Berry ("Berry"), Lieutenant Edwards ("Edwards"), Unit Manager Cory Krabbe ("Krabbe"), Correctional Officer Jordan Lykins ("Lykins"), and Unit Manager Jessie Willis ("Willis"), all of whom are LeCI employees, as Defendants in their individual capacities. ECF No. 1-1 at PageID 11-14.

Plaintiff alleges that he arrived at LeCI on September 20, 2023, and was placed in "general population" in the "A-Adam" housing unit. ECF No. 6 at PageID 108. Plaintiff submits that immediately upon arrival in A-Adam he was harassed by multiple inmates making various sexual references about Plaintiff's sexual orientation, which Plaintiff alleges stems from an incident that occurred in 2021 when Plaintiff was housed at the Mansfield Correctional Institution. *Id.* Later that same day, Plaintiff filed a Prison Rape Elimination Act ("PREA") Complaint via a call Plaintiff made to the PREA hotline (the "First PREA Complaint") relating to his fear of sexual and/or other physical assault by inmates. ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 108. In the First PREA Complaint, Plaintiff explained that he was fearful for his safety due to his placement in A-Adam, which he described as "the worse housing unit in LeCI in regards to violence, sexual assault, etc." ECF No. 1-1 at PageID 16 (capitalization corrected).

Plaintiff alleges that because he filed the First PREA Complaint, he was called into

---

[3] As Plaintiff was ordered to supplement his Complaint to clarify his Eighth Amendment failure to protect and First Amendment retaliation claim, and as this Court has recommended all remaining claims in his Complaint be dismissed, *see* ECF No. 2, the Court recites the facts as alleged in both the Complaint and Supplemental Complaint only in relation to his Eighth Amendment failure to protect and First Amendment retaliation claims here.

Defendant Tabor's office for an interview the following day.  ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 108.  During the interview, Plaintiff alleges he explained to Tabor that he filed the First PREA Complaint because he had been a victim of sexual abuse at previous prisons and feared future sexual abuse/assaults since some of his prior abusers or inmates who knew of the prior sexual abuse were also now housed at LeCI in the A-Adam unit.  ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 109.  Plaintiff claims Tabor yelled at him, called him a manipulator, indicated he was not going to help Plaintiff, and informed him that the only way he would be moved from A-Adam was if Plaintiff "refused to lock."  ECF No. 1-1 at PageID 16 (internal quotations omitted); *see also* ECF No. 6 at PageID 109.  Ultimately Plaintiff told Tabor he "refused" to be housed in A-Adam due to Plaintiff's fear for his life,[4] which resulted in Tabor moving Plaintiff to "D-Block," a "limited privilege" housing unit.  ECF No. 6 at PageID 109.  When Plaintiff later took his concerns to Defendant Krabbe, Plaintiff alleges Krabbe also told him he would not help him.  ECF No. 1-1 at PageID 16.

According to Plaintiff, on November 22, 2023, he was "mistakenly" released from D-Block back to A-Adam by Defendant Edwards for a "conduct report."  *Id.*  Although "mistakenly" returned to A-Adam, Plaintiff was still housed in A-Adam, and Defendant Lykins was on duty on the afternoon of November 26, 2023, when Plaintiff alleges he overheard Lykins state to his cellmate Anthony Cunningham ("Cunningham") that "Krabbe has a nice bag of goodies.  If he put

---

[4] It is unclear from the Complaint and Supplemental Complaint whether Plaintiff was transferred to D-Block because he told Tabor he would not lock down or if Plaintiff actually refused to lock down.  *See* ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 109.

a dick up my ass so I can chill" which Plaintiff asserts was a reference to Cunningham's planned sexual assault of Plaintiff.  *Id.*

That same afternoon, Plaintiff claims that when he woke up from a nap he saw Cunningham, who appeared intoxicated, masturbating and making sexual remarks to Plaintiff while staring at Plaintiff and holding a knife.  *Id.*  Plaintiff jumped down from his bed and asked inmate Cunningham what he was doing, but Cunningham told him to be quiet and placed his hand on Plaintiff's buttocks (the "Sexual Assault Incident").  *Id.*  At some point that day, Cunningham told Plaintiff that he was acting at the bequest of Defendants Berry, Krabbe, Kerner, and Lykins in exchange for contraband.  ECF No. 1-1 at PageID 17; ECF No. 6 at PageID 110.

Plaintiff then reported the Sexual Assault Incident to Defendant Lykins, who told Plaintiff that "she didn't care."  ECF No. 1-1 at PageID 17.  That same day, Plaintiff alleges he filed a second PREA Complaint regarding the Sexual Assault Incident (the "Second PREA Complaint") indicating he had been sexually assaulted, that prison staff was aware and potentially involved in the incident, but that nothing had been done and he feared for his safety.  ECF No. 6 at PageID 110.  Around this same time, Plaintiff asserts he was sentenced for a "conduct report."  ECF No. 6 at PageID 109.

The following day, Defendants Krabbe, Berry, and Kerner authorized Plaintiff's return to segregation.  ECF No. 1-1 at PageID 17.  The day after his return to segregation, November 28, 2023, Plaintiff reported a theft of his belongings[5] and the Sexual Assault Incident, as well as the lack of response by LeCI staff to the mental health unit.  *Id.* at PageID 18.  Later that same day, Plaintiff was interviewed by Kerner and Berry due to his report to the mental health unit, where

---

[5] This Court previously addressed Plaintiff's claims relating to the alleged theft of his belongings by Cunningham, recommending dismissal of his claim relating to the theft.  *See* ECF No. 2.

Plaintiff alleges he told them about Cunningham's theft, the Sexual Assault Incident, and Defendant Lykins' alleged "negligence." *Id.* In response, Plaintiff submits Kerner and Berry yelled profanities at Plaintiff, told him they did not believe him, and notified him that the Sexual Assault Incident did not qualify as an act of sexual abuse or harassment under the PREA. *Id.* Finally, Kerner and Berry told Plaintiff they condoned Lykins' actions, and admitted that they, along with Krabbe, told inmate Cunningham to "give [Plaintiff] a reason to file a lawsuit," indicating they had ordered or encouraged the Sexual Assault Incident. *Id.* at PageID 18-19 (capitalization corrected). Plaintiff alleges Kerner ultimately closed Plaintiff's Second PREA Complaint after a week as unsubstantiated without performing a proper investigation. *Id.* at PageID 19. When Plaintiff returned to segregation, Edwards told him that the Sexual Assault Incident was ordered by Krabbe, Tabor, and Berry, in retaliation for Plaintiff filing the First PREA Complaint. *Id.*

According to Plaintiff, on December 7, 9, and 10, 2023, he complained to LeCI staff that he was "having a mental health crisis," but non-defendant Amber Stanley denied him assistance. *Id.* at PageID 24.

On January 24, 2024, Plaintiff alleges that Defendant Willis, in retaliation for Plaintiff filing the Second PREA Complaint, assigned Plaintiff a cellmate who is a gang member and close friend of inmate Cunningham. ECF No. 6 at PageID 110.

On February 24, 2024, Plaintiff alleges that, after he refused to lock down due to fear for his personal safety, he was moved to CR-Block, a segregation unit, at the orders of Defendants Berry, Edwards, Kerner, and Willis, where he was assigned to a cell with inmate Archie Goggans, who was a known sexual predator placed in segregation due to "sticking a broomstick in another inmate[']s anus." ECF No. 1-1 at PageID 24; ECF No. 6 at PageID 110. Plaintiff alleges that,

although he notified each Defendant that Goggans is a sexual predator and that he feared for his personal safety, none of the Defendants adequately investigated his claim and he remains housed with Goggans in CR-Block as of June 2024. ECF No. 1-1 at PageID 24; ECF No. 6 at PageID 110. Specifically, Plaintiff alleges he has repeatedly asked Edwards to be housed with a different cellmate due to Goggans' status as a known sexual predator and the prior Sexual Assault Incident, but that Edwards told Plaintiff he refused to move him because Plaintiff was a snitch for making the First Call to the PREA hotline in September of 2023. ECF No. 6 at PageID 110.

On March 4, 2024, Plaintiff made a request to Defendant Willis (and the protective custody committee) to be placed in protective custody after receiving death threats from Cunningham's gang for reporting the Sexual Assault Incident to prison officials. ECF No. 1-1 at PageID 20-21. During his interview with Willis, Plaintiff explained threats were being made on his life because Cunningham's gang believed Plaintiff was a snitch due to Plaintiff filing the First PREA Complaint. *Id.* at PageID 21. However, Plaintiff alleges his request was denied after two days, and he is "forced to carry knives for protection." *Id.* at PageID 21 (capitalization corrected). It appears that Plaintiff asserts at some point he was returned to general population housing but, in order to preserve his personal safety, he had to refuse to lock down. *Id.*

According to Plaintiff, he reported to each Defendant on at least three separate occasions that he is in fear for his life due to his reporting the Sexual Assault Incident and the previous incident that occurred at another institution, but his reports were ignored out of each Defendant's "personal malice." *Id.* at PageID 22. As a result, Plaintiff alleges he receives ongoing threats to his life from multiple gang members due to his reporting of the Sexual Assault Incident, and that, if nothing is done, Plaintiff may have to resort to using deadly force in the future to defend himself. *Id.* at PageID 22; ECF No. 6 at PageID 111 (alleging he is threatened with great bodily harm from

various inmates due to Plaintiff's filing of the Second PREA Complaint).  Plaintiff also alleges he provided Defendant Willis with a letter from multiple inmates at LeCI that Plaintiff would be "stabbed" or "beaten badly" if he were returned back into general population at LeCI.  ECF No. 6 at PageID 112.

Plaintiff further alleges that, since filing the instant suit, he has been denied access to legal materials, his legal mail has been tampered with and delayed, he has been denied mental health and medical attention, he has been threatened with great bodily harm by LeCI "staff" and inmates, and he remains in fear for his life.  ECF No. 5 at PageID 106.

Finally, Plaintiff alleges that all administrative remedies have been exhausted.  ECF No. 1-1 at PageID 24, 26.

The Court construes Plaintiff's Supplemental Complaint as providing factual supplementation to his Eighth Amendment failure to protect claim against:

1.  Defendants Tabor and Krabbe for failing to move Plaintiff to another housing unit after filing the First PREA Complaint, due to his fear of sexual assault based on inmates in the A-Adam unit's knowledge of, and harassment about, a prior incident;

2.  Defendants Kerner, Berry, Lykins, Tabor, and Krabbe for encouraging and/or ordering inmate Cunningham to sexually assault Plaintiff, resulting in the Sexual Assault Incident;

3.  Defendant Willis for housing Plaintiff with a gang member who was friends with inmate Cunningham after the Sexual Assault Incident, knowing that Plaintiff was being threatened by that same gang; and

4.  Defendants Edwards, Kerner, Berry, and Willis for moving him into housing with inmate Goggans, a "known sexual predator" following the Sexual Assault Incident.

ECF No. 1-1 at PageID 16-22; ECF No. 6 at PageID 108-12.

The Court also construes the additional facts in the Supplemental Complaint as supporting the following First Amendment retaliation claims against:

1. Defendants Krabbe, Tabor, and Berry for their refusal to reassign Plaintiff to a different housing unit in retaliation for Plaintiff filing the First PREA Complaint;

2. Defendants Lykins, Kerner, Berry, and Krabbe for ordering or encouraging inmate Cunningham to sexually assault Plaintiff in retaliation for Plaintiff filing the First PREA Complaint;

3. Defendant Willis for assigning Plaintiff a cellmate who allegedly is a gang member and friends with inmate Cunningham in retaliation for filing the Second PREA Complaint; and

4. Defendants Berry, Willis, Edwards, and Kerner for reassigning him a new cellmate who was a known sexual predator in retaliation for Plaintiff filing the First and Second PREA Complaint.[6]

ECF No. 1-1 at PageID; ECF No. 6 at PageID 109–112.

Plaintiff categorizes his resulting injuries as "emotional distress," including fearing for his life, and a decline in his mental health, including contemplating suicide. ECF No. 1-1 at PageID 23. Plaintiff seeks compensatory damages, punitive damages, and declaratory relief in the form of a declaration that all acts and omissions of all Defendants violated Plaintiff's federally protected constitutional rights, an emergency injunction requiring the Ohio Department of Rehabilitation

---

[6] The Court also construes Plaintiff's Supplemental Complaint as setting forth a new Eighth Amendment deliberate indifference to medical treatment claim and denial of access to the courts claim. ECF No. 5; ECF No. 6 at PageID 112. However, as Plaintiff fails to name any specific defendants in relation to either claim, referring only to "LeCI staff" as being responsible, to the extent he intended to bring such claims this Court **RECOMMENDS** that any deliberate indifference to medical needs and denial of access to courts claims Plaintiff intended to bring should be **DENIED without prejudice** for failure to state a claim.

and Corrections to transfer Plaintiff from LeCI, and issuance of an institutional separation from inmate Cunningham and from each named Defendant. ECF No. 1-1 at PageID 23; ECF No. 6 at PageID 112-13.

## II.  Initial Screening Standard

As this Court noted in its Order and Report and Recommendations addressing Plaintiff's initial Complaint, *see* ECF No. 2 at PageID 64-65, because Plaintiff is a *pro se* prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. § 1915A(a). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

## III.  Discussion

As noted above, Plaintiff seeks relief against all Defendants in their individual capacities pursuant to 28 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams,* 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks,* 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991).

### A.  Eighth Amendment[7] Failure to Protect

The Court construes Plaintiff's allegations as alleging the following failure to protect claims under the Eighth Amendment: (1) against Defendants Tabor and Krabbe for failing to reassign Plaintiff to a different housing unit after Plaintiff informed Defendants Tabor and Krabbe that Plaintiff was in danger of sexual and other physical assault from inmates in his assigned housing unit due to an incident that had occurred at another institution; (2) against Defendants Kerner, Berry, Lykins, and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff; (3) against Defendant Willis for housing Plaintiff with a gang member who was friends with inmate Cunningham after the Sexual Assault; and (4) against Defendants Edwards, Kerner, and Willis for moving him into housing with inmate Goggans, a "known sexual predator," following the Sexual Assault Incident.  ECF No. 1-1 at PageID 16-21; ECF No. 6 at PageID 108-12.

The Eighth Amendment protects incarcerated people from "cruel and unusual punishments."  U.S. Const. amend. VIII.  The "prohibition of cruel and unusual punishments requires prison officials to 'ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates.'"  *Zakora v. Chrisman*, 44 F.4th 452, 467 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

The guarantee of safety includes a requirement that prison officials protect prisoners from "violence at the hands of other prisoners."  *Price v. Ohio Dep't of Rehab. & Corr.*, No. 1:19-cv-740, 2023 WL 32838, at *5 (S.D. Ohio Jan. 3, 2023) (quoting *Farmer*, 511 U.S. at 833) (internal

---

[7] In his Supplemental Complaint Plaintiff also alleges that he is being deliberately denied medical treatment.  ECF No. 6 at PageID 112.

quotations omitted).  However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Rather, to maintain an Eighth Amendment claim based on a failure to prevent harm, an inmate must allege both an objective and subjective component.  *Id.*

The subjective component requires the plaintiff to allege that the defendant acted with "deliberate indifference" to that risk.  *Id.*  "Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotation marks and citations omitted); *Farmer*, 511 U.S. at 834, 837.  Such knowledge can be inferred via circumstantial evidence or "from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.  However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment, even if the risk was obvious and a reasonable prison official would have noticed it.  *See id.* at 841-42.

Regarding the objective component, a plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Courts may consider factors such as the relative size, mental capacity, and nature of the inmate when considering the potential for harm a situation poses.  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).  Therefore, the objective component is satisfied by allegations that absent reasonable precautions, an inmate was exposed to a substantial risk of serious harm.[8]  *Farmer*, 511 U.S. at 836.

---

[8] While there is some debate as to whether all Eighth Amendment failure to protect claims require actual injury in order to proceed, *see Huber v. Nolan*, No. 1:19-cv-224, 2019 WL 6842935, at *4 (S.D. Ohio Nov. 13, 2019) (discussing the physical injury requirement), *report and recommendation adopted*, No. 1:19-cv-00224, 2019 WL 6840160 (S.D. Ohio Dec. 16, 2019), as the physical harm requirement is less than crystal-clear, at this stage of the

With these concepts in mind, the Court now considers the Plaintiff's Eighth Amendment failure to protect claims.

Plaintiff first alleges that he sought transfer to another unit from Defendants Tabor and Krabbe due to his fear of sexual assaults and other bodily harm by inmates in the A-Adam unit based on an incident that occurred at another institution.  ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 108.  While Plaintiff was transferred to D-Block, a restrictive housing unit, Plaintiff's allegations establish his transfer was not done to protect him but to punish Plaintiff for failing to, or threating to refuse to, "lock down" to obtain a housing transfer.  ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 108-09.

Plaintiff, however, was indeed transferred to another unit two days after his placement in the A-Adam housing unit began, and he suffered no harm prior to his transfer.  *See* ECF No. 6 at PageID 109.  The fact that his transfer was not done for his safety is irrelevant.  Where a plaintiff "fail[s] to state that he actually suffered any harm from the alleged failure to protect him[,]" dismissal of the claim is appropriate because "[a] § 1983 claim only occurs when the threats or threatened conduct results in a constitutional deprivation."  *Branham v. Grinage*, 869 F.2d 1488, 1989 WL 11070 (6th Cir. 1989), (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985) (per curiam)).

Therefore, this Court **RECOMMENDS** that any Eighth Amendment failure to protect claims against Defendants Tabor and Krabbe relating to their alleged failure to change Plaintiff's housing assignment due to Plaintiff's fear of attack from inmates based on a prior incident at a different facility should be **DISMISSED without prejudice.**

---

proceeding this Court shall not endeavor to make such a determination, but notes that aside from being touched by Cunningham on the buttocks during the Sexual Assault Incident, Plaintiff only alleges mental and emotional harm resulting from the Defendants' alleged inaction.

Next, Plaintiff alleges that Defendants Kerner, Berry, Lykins, and Krabbe encouraged and/or ordered Plaintiff's cellmate to sexually assault him. "While general disagreements or unsupported idle threats, without more, are insufficient to establish a substantial risk of serious harm, knowledge that an inmate intends to seriously assault another inmate can be enough to satisfy the objective component." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 3437198, at *3 (S.D. Ohio May 12, 2023) (collecting cases), *report and recommendation adopted*, No. 1:22-cv-337, 2023 WL 4348835 (S.D. Ohio July 5, 2023). For example, where a prison official knew an inmate intended to assault a prisoner-plaintiff and opened the cell door to facilitate the assault, such action was sufficient to state an Eighth Amendment failure to protect claim. *Smith v. Rubley*, No. 1:22-cv-925, 2022 WL 14363680, at *8-9 (W.D. Mich. Oct. 25, 2022).

Here, without the benefit of any additional briefing and taking the allegations in the Complaint and Supplemental Complaint as true, as this Court must do at that point in the proceedings, this Court **RECOMMENDS** that Plaintiff's Eighth Amendment failure to protect claim against Defendants Kerner, Berry, Lykins, and Krabbe for ordering or encouraging the Sexual Assault Incident be allowed to **PROCEED**.

Plaintiff also alleges that, in January of 2024, Defendant Willis failed to protect him by housing Plaintiff with a gang member who was friends with Cunningham, and who believed Plaintiff was a "snitch" for filing his PREA complaints. ECF No. 6 at PageID 110. Plaintiff does not assert that he was, in fact, attacked or otherwise harmed by this cellmate. Instead, Plaintiff alleges that he feared for his safety due to future retaliation because his cellmate believed him to be a snitch and was in the same gang as Cunningham, and Plaintiff had received threatening "letters" from members of that same gang promising to harm him were he to return to general population. Plaintiff asserts that he told each Defendant of his fears, including Willis, and showed

Willis the letters from the gang members, but that Willis still denied reassigning him another cellmate or transferring him to a different housing unit. *Id.* at PageID 110, 112.

While the objective element of an Eighth Amendment failure to protect claim may be satisfied where a plaintiff received death threats and otherwise feared for his safety, more than threats are necessary for the claim to proceed. *See Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 3437198, at *3 (S.D. Ohio May 12, 2023) (collecting cases), *report and recommendation adopted*, No. 1:22-cv-337, 2023 WL 4348835 (S.D. Ohio July 5, 2023) ("While general disagreements or unsupported idle threats, without more, are insufficient to establish a substantial risk of serious harm, knowledge that an inmate intends to seriously assault another inmate can be enough to satisfy the objective component."); *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (objective element satisfied where prison official knew plaintiff's documents were used to prosecute Aryan Brotherhood member for murder, plaintiff received death threat, and Aryan Brotherhood previously harmed plaintiff in different prison). However, the Sixth Circuit has concluded that being identified as a snitch in prison "puts an inmate at substantial risk of serious assault." *See Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022) (citing *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001)).

To the extent Plaintiff alleges he informed each Defendant, including Defendant Willis, at least three times of the death threats he received from other inmates, he did so in support of not being transferred due to his fears of being housed in *general population*. ECF No. 6 at PageID 112. Plaintiff was not housed in general population in January of 2024. *Id.* However, Plaintiff does assert that he showed Willis letters sent to him from gang members threatening Plaintiff, and that Plaintiff told him Cunningham had "embedded in his gang members (CRIPS) that [Plaintiff] was a snitch after he [filed the Second PREA Complaint]." *Id.*

Plaintiff does supply potential incentives for his January 2024 cellmate to attack Plaintiff, both due to his cellmate's affiliation with a gang who had allegedly written Plaintiff threatening letters regarding Plaintiff having filed the Second PREA Complaint and because he was friends with and in the same gang with Cunningham, who was the subject of Plaintiff's Second PREA Complaint. *See McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341, at *3 (6th Cir. Apr. 14, 2023) (finding knowledge of an incentive to attack as evidence supporting an Eighth Amendment failure to protect claim). In these circumstances, a factfinder might conclude that "a reasonable officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences" of housing Plaintiff with a cellmate who was friends with Cunningham, was in the same gang as Cunningham, and who believed Plaintiff to be a snitch. *See id.* at 730.

For these reasons, this Court **RECOMMENDS** that any Eighth Amendment failure to protect claims against Defendant Willis relating to his housing Plaintiff in January 2024 with a cellmate who believed Plaintiff to be a snitch should be allowed to **PROCEED.**

Plaintiff also makes a similar failure to protect claim against Defendants Berry, Edwards, Kerner, and Willis, alleging they failed to protect him by assigning him inmate Goggans, a "known sexual predator," as a cellmate following the Sexual Assault Incident. ECF No. 6 at PageID 112. Plaintiff alleges that he made "numerous requests to [all] defendants to be removed from living with inmate Goggans" due to Goggans' known history as a sexual predator (having previously perpetrated a violent sexual attack on another LeCI inmate), and that he continues to be denied placement in protective custody by Willis and the Protective Custody Committee. *Id.* Plaintiff specifically alleges Edwards told Plaintiff he refused to move him or change his cellmate because Plaintiff was a snitch for making the First Call to the PREA hotline in September of 2023. ECF No. 6 at PageID 110.

Courts have found that the objective element is satisfied where a plaintiff was "small," "young," "suffering from severe mental illness," and had to share a cell with "older, stronger, predatory inmate" who "had been charged with multiple counts of criminal sexual conduct." *Bishop v. Hackel*, 636 F.3d 757, 761-762, 766 (6th Cir. 2011). Here, Plaintiff claims Defendants Edwards, Kerner, Berry, and Willis were aware of Plaintiff's mental health difficulties, they were aware of the Sexual Assault Incident, and they were aware of Plaintiff's intense fears of being housed with Goggans due to Goggans' known history as a sexual predator, because Plaintiff told Edwards, Kerner, Berry, and Willis on multiple occasions of his sexual assault history both at LeCI and at prior institutions, his fears of sexual assault, and his mental health issues. ECF No. 1-1 at PageID 16; ECF No. 6 at PageID 110-12.

Although Plaintiff's Complaint and Supplemental Complaint do not detail the exact conversations Plaintiff had with Defendants Berry, Edwards, Kerner, and Willis regarding his sexual assault history and his fear of being housed with Goggans, at this stage of the proceeding, this Court **RECOMMENDS** his Eighth Amendment failure to protect claim against Defendants Berry, Edwards, Kerner, and Willis relating to Plaintiff's current housing assignment with Goggans be allowed to **PROCEED**.

### B. First Amendment Retaliation

Reading Plaintiff's Complaint liberally, this Court construes the facts as alleged by Plaintiff as making the following First Amendment retaliation claims: (1) against Defendants Krabbe, Tabor, and Berry for their refusal to reassign Plaintiff to a different housing unit in retaliation for Plaintiff making his First PREA Complaint; (2) against Defendants Lykins, Kerner, Berry, and Krabbe for ordering or encouraging inmate Cunningham to sexually assault Plaintiff in retaliation for Plaintiff filing his First PREA Complaint; (3) against Defendant Willis for assigning Plaintiff

a cellmate who was a gang member and friends with inmate Cunningham in retaliation for filing the Second PREA Complaint; and (4) against Defendants Willis, Edwards, and Kerner for reassigning him a new cellmate who was a known sexual predator in retaliation for Plaintiff filing the Second PREA Complaint.  ECF No. 1-1 at PageID 16-21; ECF No. 6 at PageID 109-12.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To establish a claim of retaliation, a plaintiff must show:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wiley v. Kentucky Dept. of Corr.*, No. 11–97–HRW, 2012 WL 5878678, at *13 (E.D. Ky. 2012) (citing *Brown v. Crowley,* 312 F.3d 782, 787 (6th Cir. 2002)).

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, it follows that the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Here, as Plaintiff's contends that all of the retaliatory actions he suffered were undertaken due to his filing of PREA complaints, the first element is met.

In his first retaliation claim, Plaintiff alleges that Defendants Krabbe, Tabor, and Berry's response to Plaintiff's Call to the PREA hotline to complain about his housing assignment was deficient, and that he was reassigned to a different housing unit in retaliation for filing the First PREA Complaint.  However, while Plaintiff appears to allege that the action taken by Krabbe,

Tabor, and Berry to investigate Plaintiff's First PREA Complaint was deficient, as all they did was call Plaintiff into Tabor's office to discuss the issue with Plaintiff, even a "deficient" response is not actionable. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983); *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (explaining that a prison official's alleged failure to adequately investigate claims of misconduct also does not rise to the level of "encouragement" that would make the official liable for such misconduct). Moreover, while a prison official may not transfer a prisoner "as a means of retaliating against him for exercising his First Amendment rights," *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010), Plaintiff does not allege that he was transferred to D- Block *because* he filed the First PREA Complaint. Plaintiff alleges he was reassigned to the D-Block after Plaintiff purposefully refused to lock down to facilitate his transfer out of A-Adam because Tabor and Krabbe had refused to transfer him. *See* ECF No. 1-1 at 16; ECF No. 6 at PageID 109. As the adverse action—the transfer to a more restrictive housing unit—was done due to Plaintiff's refusal to comply with prison lock down rules, any retaliation claim related to that transfer should fail.

As such, this Court **RECOMMENDS** any retaliation claim against Defendants Tabor, Krabbe, and Berry relating to their investigation of Plaintiff's First PREA Complaint and his subsequent transfer to D-Block, should be **DISMISSED without prejudice**.

In relation to Plaintiff's second retaliation claim against Defendants Lykins, Kerner, Berry, and Krabbe for ordering or encouraging inmate Cunningham to sexually assault Plaintiff in retaliation for Plaintiff filing the First PREA Complaint, construing the pleadings as true as this Court must do upon initial review, Plaintiff's allegations clearly establish protected conduct, an

adverse action, and a connection between the two.  ECF No. 1-1 at PageID 16-17; *see Wiley*, 2012 WL 5878678, at *13.

Therefore, this Court **RECOMMENDS** any retaliation claim against Defendants Lykins, Kerner, Berry, and Krabbe for ordering or encouraging inmate Cunningham to sexually assault Plaintiff in retaliation for Plaintiff filing the First PREA Complaint, be allowed to **PROCEED**.

Plaintiff also brings a retaliation claim against Defendant Willis for assigning Plaintiff "with inmate Cunningham's close friend and associated 'CRIPS' gang-member," in retaliation for filing the Second PREA Complaint in January of 2024.  ECF No. 6 at PageID 110.  As previously noted, while a prison official may not transfer a prisoner in retaliation for filing a prison grievance, *Hill*, 630 F.3d at 473, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).  Put another way, "alleging merely the ultimate fact of retaliation is insufficient" to state a claim for relief. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *see also Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

While it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence, more is required than simply alleging a defendant retaliated against a plaintiff.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*,

833 F.2d 106, 108 (7th Cir. 1987).  Plaintiff's retaliation claim fails to allege the "more" required for his claim against Defendant Willis to proceed, as he presents no facts to support his conclusion that Willis retaliated against him because Plaintiff filed the Second PREA Complaint.  Therefore, this Court **RECOMMENDS** any retaliation claim against Willis relating to him reassigning Plaintiff's cellmate in retaliation for filing the Second PREA Complaint should be **DISMISSED without prejudice.**

Finally, Plaintiff alleges Defendants Willis, Edwards, and Kerner reassigned him a new cellmate in February of 2024, who Plaintiff claims is a known sexual predator, in retaliation for Plaintiff filing the Second PREA Complaint.  ECF No. 6 at 110.  In support of his claim against Edwards, Plaintiff alleges Edwards told him he would not change his cell assignment, transfer him to another housing unit, or institute a prison transfer as Plaintiff is a "snitch" due to his filing of the First PREA Complaint.  *Id.* at 110, 112-13.  However, Plaintiff simply concludes that both Willis and Kerner were involved in Plaintiff being housed with a "known sexual predator" in retaliation for filing PREA complaints but provides no details as to how Willis or Kerner were involved in his inmate assignment or why he believes they retaliated against him.  As previously noted, such conclusory claims, unsupported by specific facts, are insufficient to state a plausible claim for relief.  *See High v. Silverdal Core Civic of Am.*, No. 1:19-cv-00214, 2019 WL 4723803, at *1 (E.D. Tenn. Sept. 26, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).  As such, this Court **RECOMMENDS** any retaliation claim against Defendants Willis and Kerner relating to the cellmate reassignment in February of 2024, should be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

As against Defendant Edwards, Plaintiff alleges Edwards told him that he refused to reassign Plaintiff a new cellmate, knowing Plaintiff's current cellmate had previously committed

a sexual assault while incarcerated. Further, Plaintiff states that Edwards specifically said he did so in retaliation for Plaintiff filing PREA complaints. ECF No. 6 at PageID 112.

While a close call, at this stage in the pleadings, to the extent Plaintiff alleges Defendant Edwards placed a dangerous inmate (Goggans) in Plaintiff's cell with the intention of allowing that inmate to harm Plaintiff (or knowing that possibility existed) in retaliation for Plaintiff's filing PREA complaints, and/or to the extent he refused to reassign him, this Court **RECOMMENDS** Plaintiff's retaliation claim against Defendant Edwards be allowed to proceed. *See Dunbar v. Heyns*, No. 2:15-cv-11573, 2017 WL 11528244, at *3 (E.D. Mich. July 12, 2017) (allowing retaliation claim alleging prison officials housed a plaintiff to be housed with dangerous inmates in retaliation for filing prison grievances be allowed to proceed in initial review).

## IT IS THEREFORE RECOMMENDED THAT:

The Court **DISMISS without prejudice** all claims in Plaintiff's Complaint aside from his Eighth Amendment failure to Protect and First Amendment Retaliation claims as previously recommended by this Court in its first initial review, ECF No. 2, and that the Court **DISMISS without prejudice** all claims alleged by Plaintiff in his Supplemental Complaint with the exception of the following claims: (1) Eighth Amendment failure to protect claim against Defendants Kerner, Berry, Lykins, and Krabbe for ordering or encouraging the Sexual Assault Incident; (2) Eighth Amendment failure to protect claim against Defendant Willis relating to his housing Plaintiff with a cellmate in January 2024 who believed Plaintiff to be a snitch; (3) Eighth Amendment failure to protect claim against Defendants Berry, Edwards, Kerner, and Willis relating to Plaintiff's current housing assignment with inmate Goggans; (4) First Amendment retaliation claim against Defendants Lykins, Kerner, Berry, and Krabbe for ordering or encouraging inmate Cunningham to sexually assault Plaintiff in retaliation for Plaintiff filing the

First PREA Complaint; and (5) First Amendment retaliation claim against Defendant Edwards for placing a dangerous inmate (Goggans) in Plaintiff's cell in retaliation for Plaintiff's filing of PREA complaints.

**IT IS THEREFORE ORDERED THAT:**

1.      Plaintiff's Motion to for Public Records Request, ECF No. 4, is **DENIED without prejudice as premature**.

2.      Plaintiff's Motion to Compel Discovery, ECF No. 7, is **DENIED without prejudice as premature**.

3.      The United States Marshal shall serve a copy of the Complaint, Supplemental Complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon Defendants Kerner, Lykins, Berry, Krabbe, Willis, and Edwards as directed by Plaintiff, with costs of service to be advanced by the United States.

3.      Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4.      Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

June 27, 2024                                        *s/Peter B. Silvain, Jr.*
                                                    Peter B. Silvain, Jr.
                                                    United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, **<u>within fourteen</u> <u>(14) days</u>** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).