UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAYMOND D. BUSHNER,

    Plaintiff,

  v.

ERIC KERNER, et al.,

    Defendants.

Case No. 2:24-cv-1861

JUDGE DOUGLAS R. COLE
Magistrate Judge Silvain

## OPINION AND ORDER

Plaintiff Raymond D. Bushner, a prisoner proceeding pro se and in forma pauperis (IFP), brings a litany of claims under 28 U.S.C. § 1983 against seven Corrections Officers at the Lebanon Correctional Institution, alleging they deprived him of various constitutional rights during his time there. As required by statute, 28 U.S.C. §§ 1915A, 1915(e), a Magistrate Judge screened Bushner's Complaint. Based on that review, he issued a Report and Recommendation (R&R) recommending dismissal of some claims while allowing Bushner to supplement his allegations as to others. (Doc. 2). After Bushner filed additional materials, the Magistrate Judge issued a second R&R, screening for a second time the now-augmented claims that hadn't been recommended for dismissal the first go-round. (Doc. 9). That second R&R recommends that some of the remaining claims, but not others, be dismissed. (*Id.*). Both R&Rs are now before the Court. For the reasons explained below, the Court **ADOPTS** all the Magistrate Judge's recommendations and allows only those claims specifically enumerated at the conclusion of this Opinion and Order to proceed.

## BACKGROUND[1]

Plaintiff Raymond D. Bushner's time at Ohio's Lebanon Correctional Institution (LeCI) was, in his telling—and putting it mildly—challenging. So challenging, in fact, that he "contemplate[d] suicide as a means to escape being housed [t]here." (Compl., Doc. 3, #90). The Complaint sets forth the alleged events—which the Court must accept as true at this stage, *see supra* note 1, that led him to this grim state of mind.

Start at the beginning: Bushner's first day at LeCI, on September 20, 2023. (Doc. 3, #86; Supp. Am. Compl., Doc. 6, #108).[2] After being processed in, Bushner was assigned to cell block A-Adam, "a housing assignment in general population at LeCI." (Doc. 6, #108 (cleaned up)). According to Bushner, A-Adam "is branded as the worse [sic] housing unit in LeCI in regards to violence [and] sexual assault." (Doc. 3, #86). And although he was new to the cell block, he wasn't a stranger to its inhabitants. "Immediately after arriving ..., several inmates began taunting [Bushner] with sexual references ... due to their familiarity with [his] being walked fully naked [and] handcuffed ... by staff" during an earlier stint at a different prison. (Doc. 6, #108).

Struck by the possibility that his new neighbors may have designs to sexually assault him, Bushner took action. First, he placed a call to a hotline established under

---

[1] Because this case is before the Court for initial screening under 28 U.S.C. §§ 1915A, 1915(e), it must accept Bushner's factual allegations as true. *Heilman v. Michigan*, No. 1:14-cv-14747, 2015 WL 13741696, at *4 (E.D. Mich. Feb. 26, 2015). But in so doing, the Court reminds the reader that they are just that—allegations.

[2] The Court's quotations from Bushner's filings will be lightly edited for readability, primarily to remove unnecessary capitalization and quotation marks.

the Prison Rape Elimination Act (PREA), 30 U.S.C. § 30301 et seq.; *see also* 28 C.F.R. § 115.51. (Doc. 6, #108). Second, he requested a cell-block reassignment from Defendant Tabor.[3] (*See id.* at #108–09). But according to Tabor, "the only way [Bushner] would be moved were if he 'refused to lock.'"[4] (*Id.* at #109). Seeing no other way out and "fear[ing] for his life," Bushner did just that, resulting in his reassignment to "D-Block," a "limited privilege housing" unit. (*Id.*).

Bushner's reassignment was hardly the cure he had hoped for, though. About a month after his move to D-Block, Bushner was "mistak[en]ly released" back to A-Adam—the block he'd wanted to avoid in the first place. (*Id.*). Although that arrangement only lasted five days, (*id.*), it all but confirmed Bushner's fears about A-Adam. He alleges that his cellmate during that five-day stretch, Anthony Cunningham, sexually assaulted him. (Doc. 3, #87; Doc. 6, #110). What's worse, Cunningham allegedly acted on the orders of four of the Corrections Officers whom Bushner now names as Defendants—Berry, Krabbe, Lykins, and Kerner. (Doc. 6, #110 (alleging that Cunningham assaulted Bushner for, among other things, "contraband drugs" and "tobacco dip" promised by Berry, Krabbe, Lykins, and Kerner)). Those Defendants allegedly admitted that they enticed Cunningham to assault Bushner "because [he] called the [PREA] hotline on September 20, 2023."

---

[3] Bushner doesn't specify Defendant Tabor's first name in any of his filings. The same goes for Defendants Berry and Edwards.

[4] Bushner doesn't specify what it means to "refuse to lock," but it is at least clear that to do so entails disciplinary consequences. (*See* Doc. 6, #125 (explaining that Bushner "received a refused lock ticket")).

3

(Doc. 3, #89). Undeterred, Bushner once more contacted the PREA hotline to report Cunningham's assault. (*See id.*).

After that harrowing five-days back in A-Adam, Defendants Berry, Krabbe, and Kerner returned Bushner to segregation (i.e., D-Block). (*Id.* at #17). Bushner's second stint in isolation didn't go well. Starting on January 24, 2024, he was "forced" by another Corrections Officer, Defendant Jessie Willis, to cell with an inmate who was a close friend of [] Cunningham['s] [i.e., Bushner's assailant from A-Adam] as well as being in the same gang as [] Cunningham." (Doc. 3, #90; Doc. 6, #110). A month later, Bushner again "refused to lock" so that he'd be moved away from Cunningham's friend. (Doc. 6, #110). So Defendants Edwards, Kerner, Berry, and Willis moved Bushner again—still in segregation—to a cell "with yet another sexual predator," an inmate named "Archie Goggans." (*Id.*). As of the time he filed what he called a "Supplemented" Amended Complaint, Bushner was still housed with Goggans, owing to Defendant Edwards' refusal to move Bushner once more.[5] (*Id.*).

To sum up, Bushner's misfortunes started the moment he reached LeCI. He submitted a PREA complaint the day he got there. Fearing immediate harm, he refused to lock, for which the Corrections-Officers Defendants moved him out of general population and into a segregated housing unit. Without explanation, some Defendants moved Bushner back to general population, where they allegedly plied Cunningham to sexually assault Bushner in retaliation for his PREA complaint. So

---

[5] Bushner filed a Notice of Address Change on August 12, 2024, indicating that he'd been moved from LeCI to the Warren Correctional Institution. (Doc. 13, #182; *see also* Order, Doc. 16, #196).

4

he filed a second PREA complaint. In retaliation for that second complaint, some Defendants then housed Bushner with one of Cunningham's close friends and gangmates. And when Bushner refused to lock while in that cell, they retaliated further by housing him with an alleged sexual predator, Goggans.

That series of events spawned this lawsuit. According to Bushner, he first pursued his administrative remedies within the prison system.[6] (Doc. 3, #92; *see* Doc. 6, #114–130). Then, failing to find redress there, Bushner filed his initial Complaint (Doc. 3) on April 18, 2024. That Complaint was not the model of clarity. In the first of the two R&Rs under consideration here, the Magistrate Judge construed it as raising the following claims under 28 U.S.C. § 1983:

> 1. Eighth Amendment failure to protect against Tabor and Krabbe for failing to reassign Plaintiff to a different housing unit after Plaintiff informed Tabor and Krabbe that Plaintiff was sexually assaulted at another institution; against Lykins and Krabbe for encouraging and/or ordering another inmate to sexually assault Plaintiff; against Lykins, Kerner, and Berry for ignoring Plaintiff's report of the Sexual Assault Incident [i.e., Cunningham's assault]; and against all Defendants for failing to protect him from future sexual assaults following the Sexual Assault Incident.
>
> 2. [First Amendment] [r]etaliation for calling the PREA hotline against Defendants Lykins, Krabbe, Tabor, and Berry [for housing Plaintiff with Cunningham's friend and gangmate].
>
> 3. Prison policy violations including access to grievance procedures and failure of prison staff to follow prison policies and procedures against all Defendants (including claims of allowing inmates to pack his property outside of Plaintiff's presence, failing to properly investigate allegations of misconduct brought against Plaintiff, and failing to act

---

[6] For present purposes, the Court accepts Bushner's representation that he has exhausted his administrative remedies, but without prejudice to Defendants raising an administrative exhaustion defense if they contest that representation.

5

      after Plaintiff informed all Defendants he was in danger due to his cellmate re-assignment).

    4.    Theft of his personal property by inmate Cunningham.

    5.    Denial of access to attorney communication against Edwards and unnamed "bosses."

(Doc. 2, #62–63).

Exercising his screening authority under 28 U.S.C. §§ 1915A, 1915(e), the Magistrate Judge concluded that all the claims, as then pleaded, fell short. (Doc. 2, #76–77). But his recommended course of action varied among the five categories. As to the first two categories (the claims alleging failures to protect in violation of the Eighth Amendment and retaliation in violation of the First Amendment), the Magistrate Judge ordered Bushner to supplement his Complaint within thirty days to address the shortcomings the R&R identified. (*Id.* at #76). But as to the remaining three categories of claims, the R&R recommended dismissal without prejudice, and did not specify that Bushner should re-plead. (*See id.*).

Bushner filed the requested supplementation. (Doc. 6). After that, the Magistrate Judge re-screened the Complaint and Supplemented Amended Complaint together.[7] (Doc. 9). This time around, the Magistrate Judge recommended that some of the claims in the two categories passed the statutory screening thanks to Bushner's supplemental filing, but that others should be dismissed without prejudice. (*Id.* at #160–61). Separately, the Magistrate Judge reinstated his recommendation regarding dismissal without prejudice as to the other claims. (*Id.* at #160). All told,

---

[7] For the rest of this Opinion and Order, the Court will refer to Bushner's pleadings, (Docs. 3, 6), collectively as his Complaint.

the R&R recommended that (1) three Eighth Amendment claims move forward, (2) two First Amendment retaliation claims move forward, and (3) that all remaining claims be dismissed without prejudice.

The Magistrate Judge also advised the parties in both R&Rs that they had fourteen days to object if they wished to do so. (*Id.* at #162; Doc. 2, #78). That time has long since passed without objection, so the R&Rs are ripe for the Court's review.

## LEGAL STANDARD

Since Bushner is a prisoner seeking redress against government officers or employees, the Court is required to screen his Complaint "as soon as practicable after docketing." 28 U.S.C. § 1915A(a). That statute requires the Court to "dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1). A second statute, § 1915(e)(2)—the IFP statute—also requires sua sponte dismissal in the same instances. And that's because "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

Dismissals for failure to state a claim at the screening stage are governed by the same standards that apply to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under that standard, a "complaint must present sufficient facts to 'state

a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But that does not mean the Court must take everything Bushner alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact, legal conclusions, or "formulaic recitations of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

That's the standard by which the Court reviews complaints subject to screening in general. But where that screening is initially accomplished by a Magistrate Judge in an unobjected R&R (or, here, two unobjected R&Rs), the Court need only review the R&Rs' application of the screening standard for clear error. *Williams v. Parikh*, 708 F. Supp. 3d 1345, 1352 (S.D. Ohio 2023); *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

In short, complaints at the screening stage are reviewed only for frivolousness, malice, or failure to state a claim in line with the standard that controls under Federal Rule of Civil Procedure 12(b)(6). That's a low bar. And where a Magistrate Judge issues unobjected recommendations after applying the screening standard, his application of that low bar is largely insulated from further review, subject only to a clear error standard.

8

**LAW AND ANALYSIS**

The Court is satisfied that the Magistrate Judge did not err, let alone clearly err, in his R&Rs upon screening Bushner's Complaint. The Court takes each of the Complaint's claims, along with the Magistrate Judge's analysis of those claims, in turn.

**A. Some of Bushner's First Amendment Retaliation Claims May Proceed.**

Start with the First Amendment claims. The Magistrate Judge construed Bushner's Complaint as alleging four retaliation claims based on various Defendants' actions in response to his PREA complaints. (Doc. 9, #155–56). As discussed below, the Court finds no error in the R&R's recommendations as to which of those claims survive screening.

While "First Amendment rights, like many other rights, are circumscribed in the prison setting ..., inmate[s] retain[] [certain] First Amendment rights." *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999) (quotation omitted). Among those is the right to file a prison grievance. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). While Bushner doesn't claim that his right to file a prison grievance was *violated* per se, he does claim that he suffered retaliation for exercising that right—a "well established" constitutional wrong of its own. *Thaddeus-X*, 175 F.3d at 386.

To make out a claim for retaliation under the First Amendment, Bushner ultimately must show: (1) he was engaged in protected conduct; (2) he suffered an adverse action "that would deter a person of ordinary firmness from continuing to

9

engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [] protected conduct." *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002). So at the screening stage, he must allege facts making it at least plausible that he can make those showings.

To start with, the R&R correctly observes that Bushner "contends that all of the retaliatory actions he suffered were undertaken due to his filing of PREA complaints," which is First Amendment-protected conduct. (Doc. 9, #156). Thus, the R&R is correct that the "first element is met" on all Bushner's retaliation claims. (*Id.*).

While they share a common first element, the R&R concluded that Bushner's retaliation claims differ in their particulars as to elements two and three. So the Court takes each in turn.

Bushner's first retaliation claim alleges that Defendants Krabbe, Tabor, and Berry retaliated against him by assigning him to D-Block in response to his first PREA complaint. (*Id.* at #156–57). The problem, though, is that Bushner's own allegations undercut any plausible showing on the causation element of his retaliation claim: he alleges that those Defendants moved him to D-Block not because he filed his PREA complaint, but because he "refused to lock" when assigned to A-Adam. (*Id.* at #157; *see also* Doc. 3, #86; Doc. 6, #109). So the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #157), and **DISMISSES** this claim **WITHOUT PREJUDICE**.

Bushner's second retaliation claim alleges that Defendants Lykins, Kerner, Berry, and Krabbe encouraged Cunningham to sexually assault Bushner in

10

retaliation for his first PREA complaint. (Doc. 9, #157–58). "[P]aid sexual assault is objectively adverse for First Amendment purposes." *Zimmer v. Unknown Metro*, No. 2:22-cv-200, 2023 WL 1878911, at *5 (W.D. Mich. Feb. 10, 2023) (allowing a similar retaliation claim to proceed on screening). So the adverse-action element is met. As is the causation element: Bushner alleges that he overheard one Defendant in the act of bribing Cunningham, and that the other Defendants confessed that they promised to slip Cunningham desirable contraband in exchange for sexually assaulting Bushner. (*See* Doc. 3, #87, 89). For those reasons, the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #158), that this claim be allowed to proceed.

The third First Amendment claim alleges that Defendant Willis assigned Bushner to share a cell with Cunningham's close friend and gangmate in retaliation for filing the second PREA complaint. (*Id.*). This claim, like the first, suffers from a causation problem. Unlike the first, though, Bushner makes at least a passing attempt at drawing a causal connection between the second PREA complaint and his assignment to bunk with Cunningham's friend. (*See* Doc. 6, #110 (alleging that "out of malice and retaliation for filing an [sic] PREA complaint, … Defendant Willis assigned Plaintiff to an [sic] housing cell assignment with Inmate Cunningham's close friend")). But the R&R correctly concluded that the causal allegation still fell short of the plausibility standard applicable at the screening stage, since Bushner's allegations fail to allege more than a conclusory statement of retaliation. (Doc. 9, #158–59). So the Court **ADOPTS** the R&R's recommendation, (*id.* at #159), and **DISMISSES** this claim **WITHOUT PREJUDICE**.

The fourth and final retaliation claim alleges that Defendants Willis, Edwards, and Kerner refused to transfer Bushner away from Goggans in retaliation for Bushner's PREA complaints. (*Id.* at #159–60). As the R&R explains, allegations that a prison official housed a plaintiff with a dangerous inmate satisfy the adverse-action requirement to state a retaliation claim. (*Id.* at #160 (citing *Dunbar v. Heyns*, No. 2:15-cv-11573, 2017 WL 11528244, at *2–3 (E.D. Mich. July 12, 2017))). But Bushner's allegations only satisfy the causation requirement for one of the three Defendants against whom he brought this claim. As to Edwards, Bushner stated sufficient causal facts linking the adverse action to his PREA complaints by explaining that Edwards "refuse[d]" to reassign him, "stating [Bushner] was a 'snitch' for calling the PREA hotline." (Doc. 6, #110). But as to Defendants Willis and Kerner, the R&R notes that Bushner "simply concludes that both Willis and Kerner were involved," in some unspecified way, with the decision to house him with Goggans. (Doc. 9, #159). In other words, Bushner alleged sufficient facts to draw a plausible causal link between his PREA complaints and Edwards'—but not Willis' and Kerner's—decision to house him with Goggans. So the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #160), that this claim be allowed to proceed as to Defendant Edwards and **DISMISSED WITHOUT PREJUDICE** as to Defendants Willis and Kerner.

**B.     Some of Bushner's Eighth Amendment Failure-to-Protect Claims May Proceed.**

Now for Bushner's Eighth Amendment claims. The R&R construed his Complaint as stating four claims under a failure-to-protect theory. (Doc. 2, #63; Doc. 9, #149).

"The Eighth Amendment's prohibition of cruel and unusual punishments requires prison officials to 'ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates.'" *Zakora v. Chrisman*, 44 F.4th 452, 467 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Plaintiffs, like Bushner, who allege breach of the requirement to guarantee inmates' safety can bring failure-to-protect claims. *Id.* at 468. "To establish an Eighth failure-to-protect claim, an inmate must show that prison officials acted with 'deliberate indifference' to 'a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 828). Stated differently, Bushner must plausibly allege facts showing that: "(1) the alleged mistreatment was objectively serious [the objective prong]; and (2) the defendant subjectively ignored the risk to [his] safety [the subjective prong]." *Id.* (quoting *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)).

Applying that standard to Bushner's four failure-to-protect claims, the Magistrate Judge found that one should be screened out and the other three allowed to proceed. (Doc. 9, #149–55). The Court finds no error in those conclusions.

Bushner's first claim alleges that Defendants Tabor and Krabbe failed to protect him from the danger he faced on A-Adam when they declined to transfer him

13

unless he refused to lock. (*Id.* at #151). But as the R&R notes, Bushner *was* moved away from A-Adam—just not under the exact circumstances he would've preferred. (*Id.*). In other words, Bushner may have alleged that Tabor and Krabbe were "deliberately indifferent" to his plight—satisfying the subjective prong for failure-to-protect claims—but his transfer undercuts any allegation of "objectively, sufficiently serious" harm. *Farmer*, 511 U.S. at 834 (cleaned up). For that reason the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #151), and **DISMISSES** this claim **WITHOUT PREJUDICE**.

Bushner's remaining claims fare better. In his second failure-to-protect claim, he alleges that Defendants Kerner, Berry, Lykins, and Krabbe failed to protect him by encouraging Cunningham to sexually assault him. (Doc. 9, #152). "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted). So Cunningham's assault of Bushner satisfies the objective prong. And Bushner's allegations against these Defendants pass the subjective prong, too. Indeed, he alleges that Defendants weren't just *aware* of Cunningham's plans to assault him, they actually *instigated* those plans. (*See* Doc. 6, #111). So the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #152), to allow this claim to proceed.

Third, Bushner claims that Defendant Willis failed to protect him by housing him with Cunningham's close friend and gangmate, who believed that Bushner had "snitched" on Cunningham by filing the second PREA complaint. (*Id.* at #152–53). On

14

top of that, Bushner allegedly received threatening letters from other members of Cunningham's and his cellmate's gang. (*Id.*). He told Willis about the letters and his fear of harm from his cellmate, but Willis did nothing. (Doc. 6, #110, 112). As the R&R explained, the Sixth Circuit has "recognized that being identified as a 'snitch' in prison puts an inmate at substantial risk of assault." (Doc. 9, #153 (citing *Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 729 (6th Cir. 2022))). So there was objective risk to Bushner when he was housed with a cellmate who belonged to the same gang as Cunningham and who believed, along with Cunningham's other gangmates, that Bushner was a snitch. Moreover, Willis was subjectively aware of that risk, since Bushner informed Willis of the death threats from Cunningham's gang members—a gang to which his new cellmate belonged. (Doc. 6, #112); *McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341, at *1, 3 (6th Cir. Apr. 14, 2023) (finding that prison official was deliberately indifferent when he knew that other inmates had "an incentive to attack" the plaintiff because they "were calling him a snitch"). Since Bushner's allegations at this preliminary stage support both elements of a failure-to-protect claim, the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #154), and allows this claim to proceed.

      Finally, Bushner asserts a similar failure-to-protect claim against Defendants Berry, Edwards, Kerner, and Willis, for assigning him to share a cell with Goggans, a "known sexual predator." (*Id.* at #155). As discussed above, the danger of sexual assault meets the objective prong. *Rafferty*, 915 F.3d at 1095; *see also Bishop v. Hackel*, 636 F.3d 757, 764, 766 (6th Cir. 2011) (finding that a plaintiff "suffering from

15

severe mental illness" was objectively at risk when housed with a "predatory" cellmate). And the subjective prong is met, too, since Bushner informed Defendants of the danger he felt he faced at Goggans' hands. (Doc. 6, #110–12). So the Court **ADOPTS** the R&R's recommendation, (Doc. 9, #155), and allows this claim to proceed.

C. **None of Bushner's Other Claims Survive Screening.**

To round things out, the Court considers the Magistrate Judge's recommendation to dispose of Bushner's remaining claims.

First, Bushner claims that Defendant Krabbe deprived him of his personal property without due process, in violation of the Fourteenth Amendment. (Doc. 2, #73). But plaintiffs can't bring due process claims "under § 1983 if adequate state remedies are available to redress the deprivation." *Damron v. Hardeman Cnty. Corr. Facility*, No. 20-1239, 2021 WL 278301, at *4 (W.D. Tenn. Jan. 27, 2021). So one requirement to plausibly allege such a due process claim, then, is to "plead that [the] available state remedies are inadequate to redress the wrong." *Id*. As the R&R notes, Bushner "has not alleged that any state remedy, such as filing suit in state court to recover his property, was inadequate." (Doc. 2, #73). So the Court **ADOPTS** its recommendation, (*id*. at #73–74), and **DISMISSES** this claim **WITHOUT PREJUDICE**.

Second, Bushner claims that Defendants failed to adequately respond to his grievances or otherwise act in accordance with prison policy. (*Id*. at #74). As to the former, "inmates do not have a constitutionally protected right to a grievance

16

procedure." *Miller v. Haines*, 156 F.3d 1231, 1998 WL 476247, at *1 (6th Cir. 1998) (Table). And as to the latter, "[t]here is no constitutional violation when state actors fail to meet their own regulations, so long as the minimum constitutional requirements have been met." *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993). Here, Bushner hasn't alleged any specific constitutional deprivation resulting from prison officials' failure to observe their own policies. So the Court **ADOPTS** the R&R's recommendations, (Doc. 2, #74–75), and **DISMISSES** these claims **WITHOUT PREJUDICE**.

Finally, Bushner alleges that Edwards denied him access to counsel to file the instant lawsuit. (*Id.* at #75). To make out a constitutional claim for denial of access to the courts, a plaintiff must show that "the inadequacy of the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *White v. Blue*, No. 4:15-cv-P100, 2015 WL 9244491, at *2 (W.D. Ky. Dec. 17, 2025) (cleaned up) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). But as the R&R notes, Bushner complains of an ultimately harmless deprivation: he wanted to call counsel to file the instant Complaint, which he was ultimately able to do. (Doc. 2, #75). So the Court **ADOPTS** the R&R's recommendation, (*id.*), and **DISMISSES** this claim **WITHOUT PREJUDICE**.

## CONCLUSION

In light of the foregoing, the Court **ADOPTS** the R&Rs under consideration here, (Docs. 2, 9), and **DISMISSES WITHOUT PREJUDICE** all of Bushner's claims aside from the following:

1. The First Amendment retaliation claim alleging that Defendants Lykins, Kerner, Berry, and Krabbe encouraged Cunningham to sexually assault Bushner in retaliation for his first PREA complaint.

2. The First Amendment retaliation claim alleging that Defendant Edwards refused to transfer Bushner away from Goggans in retaliation for Bushner's PREA complaints.

3. The Eighth Amendment claim alleging that Defendants Kerner, Berry, Lykins, and Krabbe failed to protect Bushner by encouraging Cunningham to sexually assault him.

4. The Eighth Amendment claim alleging Defendant Willis failed to protect Bushner by housing him with Cunningham's close friend and gangmate, who believed that Bushner had "snitched" on Cunningham by filing the second PREA complaint.

5. The Eighth Amendment claim alleging Defendants Berry, Edwards, Kerner, and Willis, failed to protect Bushner by assigning him to share a cell with Goggans, a "known sexual predator."

Moreover, since no claim remains against Defendant Tabor, the Court **DISMISSES** Tabor as a party to this case under Federal Rule of Civil Procedure 21. Finally, the Court **DIRECTS** the Clerk to issue summonses, and the United States Marshal to serve those summonses along with copies of the Complaint, Supplemented Amended Complaint, and this Opinion and Order, as directed by Bushner to all remaining Defendants.

**SO ORDERED.**

June 18, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**